## JOHNSON et al. v. DIERKS LUMBER & COAL CO.

### No. 12224.

Circuit Court of Appeals, Eighth Circuit.

July 23, 1942.

Lee Cazort, Jr., of Little Rock, Ark. (Osro Cobb, of Little Rock, Ark., on the brief), for appellants.

Chas. E. Whittaker, of Kansas City, Mo. (Scott Wood and E. H. Wootton, both of Hot Springs, Ark., and Henry N. Ess and Watson, Ess, Groner, Barnett & Whittaker, all of Kansas City, Mo., on the brief), for appellee.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by plaintiffs from a judgment entered on a verdict directed by the court upon its own motion. The suit was brought by Johnson, Gunter and Veazey, three employees of the defendant Dierks Lumber and Coal Company, to recover unpaid overtime compensation and liquidated damages under § 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1069, 29 U.S.C.A. § 216(b).

The defendant is a Delaware corporation engaged in owning timber land in the state of Arkansas and in the manufacture and production of lumber, a substantial part of which is sold and transported in interstate commerce. In the production of lumber the defendant operates a large number of trucks, tractors, bulldozers, road graders, and at some camps uses a large number of mules. The equipment is moved from place to place in the forest as convenience or necessity may require and is kept at varying distances from the central camp. The places where such equipment is kept and serviced are called "grease camps" or "corrals". Supplies of gasoline, oil, grease, tools, feed and accessories are kept at such camps. The employees using, operating, maintaining and caring for the equipment work in crews, each of which is under the direction and supervision of a foreman. Employees called "grease men" and "corral tenders" are in custody of the equipment at the grease camps and corrals where they live in trailers provided by the defendant. The other employees are transported daily from the central camp to the grease camps and corrals in trucks furnished by the defendant.

In July, 1940, the defendant employed the plaintiffs Johnson and Gunter as grease men. Their duty was to grease and service trucks and tractors and to keep watch seven days a week over all the equipment at the grease camps where they were respectively assigned to stay. The defendant pleads that it was agreed that their duties would require less than six hours per day but that they should be paid on the basis of six hours "whether that much be worked per day or not." Prior to October 24, 1940, their regular rate of pay was 35 cents an hour and thereafter 37 cents an hour. Veazey was employed October 28, 1938, as a corral tender at 33 cents an hour for seven days a week. He cared for mules and acted as watchman to prevent vandalism at the camp.

Johnson claimed compensation at one and one-half times his regular pay for 1,883 hours overtime from July, 1940, to January 12, 1941, in the sum of $1,013.19, and for an equal amount as liquidated damages. Gunter for practically the same period claimed 3,136 hours overtime, for which he asked compensation at one and one-half times his regular wages in the amount of $1,688.64, and for an equal sum as liquidated damages. Veazey claimed compensation for 2,475 hours overtime on the same basis in the amount of $1,212.75, and for liquidated damages. The plaintiffs asked for costs and attorney fees.

The defendant denied that plaintiffs worked any overtime.

In the course of the trial it appeared that on April 4, 1941, after the commencement of this suit, the defendant had paid Johnson $16.65 as compensation for admitted overtime work performed subsequent to October 24, 1940, and to Gunter for the same reason the sum of $22.20.

At the conclusion of plaintiffs' evidence the court on its own motion directed a verdict against Veazey, but in favor of Gunter for $22.20 and in favor of Johnson for $16.65. Judgment was entered accordingly. The judgments awarded Johnson and Gunter were for liquidated damages based upon the compensation for overtime work admitted and paid for by defendant on April 4, 1941. On the basis of this award counsel for plaintiffs were allowed an attorney fee in the sum of $100.

Since the defendant did not move for a directed verdict we must look to the ruling of the court for a statement of the grounds on which the verdicts were directed. The reasons assigned by the court may be summarized as follows:

1. The evidence as to the amount of overtime worked by each plaintiff was based upon conjecture and estimates with-

out any knowledge upon their part as to the amount of overtime they actually worked.

2. If the jury should return a verdict for the plaintiffs the duty of the court would be to set it aside because of the uncertainty of the testimony in support of the claims.

3. Plaintiff Johnson introduced in evidence a record of the overtime claimed to have been worked by him. In reference to this exhibit the court said, "An examination of the record will show that he claims to have worked as much as twenty hours a day, some days. Now, the court just doesn't believe that reasonable men do that without making some complaint at the time they are doing it."

4. On cross examination of Johnson and Gunter the defendant introduced in evidence weekly time statements beginning with the week ending December 7, 1940. These statements were prepared by Johnson and Gunter's foremen and signed by them. Above the signature of the employee was the printed statement, "I hereby state that I worked the number of hours shown hereon during the week ending ———." The statements did not show more than 40 hours worked in any one week. The court held that these time slips constituted a binding agreement between the parties, so that "under no circumstances would Johnson and Gunter be able to recover for any overtime since December 7, 1940."

■ In considering whether the court erred in directing a verdict for the defendant for any or all of the reasons assigned by it, this court must take that view of the evidence most favorable to the plaintiffs. The credibility of the witnesses and the weight of the evidence are matters for the jury and not for the court. Coen v. American Surety Co., 8 Cir., 120 F.2d 393, 397; Western & Atlantic R. R. v. Hughes, 278 U.S. 496, 498, 49 S.Ct. 231, 73 L.Ed. 473.

■ Contracts between employers and employees subject to the act and prohibited by or inconsistent with its provisions are illegal, and not binding upon the employees. Overnight Motor Transportation Co., Inc., v. Missel, 62 S.Ct. 1216, 86 L.Ed. ——; Fleming v. Warshawsky & Co., 7 Cir., 123 F.2d 622; Carleton Screw Products Co. v. Fleming, 8 Cir., 126 F.2d 537, 541; United States ex rel. Johnson v. Morley Construction Co., 2 Cir., 98 F.2d 781.

■■ Under these settled principles of law the court erred in so far as it based its ruling upon its disbelief of Johnson's testimony and upon the statements on the weekly time slips used by the defendant subsequent to December 7, 1940. By the same rule of law the agreement alleged by the defendant to have been made with each of the plaintiffs to the effect that the number of hours worked each day should not exceed six is of no avail, provided the evidence shows that the plaintiffs actually worked more than six hours a day. 29 U.S.C.A. § 203(g).

■ In view of the statement that one of the grounds for directing a verdict was that if the jury should return a verdict for the plaintiffs the court would set it aside, it should be observed that a trial court may not direct a verdict except where there is no evidence upon which a jury could properly proceed to find one for the party producing the evidence. Pleasants v. Fant, 22 Wall. 116, 89 U.S. 116, 122, 22 L.Ed. 780; Slocum v. New York Life Ins. Co., 228 U.S. 364, 369, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. The trial court should not in any instance direct a verdict when there is substantial evidence to support one, not even on the ground that if a contrary verdict were rendered the court would in its sound discretion set aside such verdict and grant a new trial. Howard v. Louisiana & A. Ry. Co., 5 Cir., 49 F.2d 571; Slocum v. New York Life Ins. Co., supra; Reid v. Maryland Casualty Co., 5 Cir., 63 F.2d 10, 12; Simkins, Federal Practice, § 626(6), p. 478.

■ The important question to be determined is whether the evidence as to the number of hours of overtime claimed to have been worked by the plaintiffs is too indefinite to support a verdict for the plaintiffs, or for any of them. In an action for unpaid compensation and liquidated damages brought under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., the burden is upon the plaintiff to establish by a preponderance of the evidence the number of hours worked and the amount of wages due; and the evidence to sustain this burden must be definite and certain. Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, 175. Cf. Carrol v. Green, 92 U.S. 509, 513, 23 L.Ed. 738; Stockwell v. United States, 13 Wall. 531, 80 U.S. 531, 542, 20 L.Ed. 491; United States v. Chamberlin, 219 U.S. 250, 262, 31 S.Ct. 155, 55 L.Ed. 204; Gale v. Union Bag & Paper Corp., 5 Cir., 116 F.2d 27, 28.

An examination of all the testimony is convincing that there is abundant evidence to have supported a finding that each of the plaintiffs actually worked overtime a considerable number of hours by whatever standard their labor be measured. Further, Johnson testified that he worked 16 hours a day regularly during the period under consideration and 24 hours a day on Sundays and holidays and on all days when the equipment under his care was not in use in the woods. Gunter and Veazey testified that they each worked 24 hours a day. Defendant's bookkeeper calculated the number of hours overtime worked by Veazey based upon plaintiffs' theory of what the evidence showed. He made similar calculations showing the number of hours worked by Gunter and Johnson. If this were all, upon plaintiffs' theory of the issues there was clearly a question for the jury, and the court erred in directing a verdict for the defendant. Southern Railway Co. v. Black, 4 Cir., 127 F.2d 280, 283. A plaintiff's testimony should not be labeled indefinite and uncertain for the reason only that it supports a claim for more than the preponderance of the evidence may show him to be entitled to recover. Moreover, where reasonable men may draw different inferences from the evidence, it is the province of the jury to determine which is proper.

The difficulty in this case arises from the different interpretations attributed by the parties to the expression "hours of labor" within the meaning of the law and of the contracts of employment. Each day that plaintiffs were required by the terms of their employment to be at the camp may be considered in two parts: (1) the hours during which they were engaged in manual labor, and (2) the hours when their sole duty was to act as watchmen. It is agreed that the plaintiffs were employed to do a certain amount of manual labor and in addition thereto to act as watchmen to prevent vandalism at the camps. They rose early in the morning and began to work at four or five o'clock making ready the machinery or the mules for the operators and drivers when they arrived at approximately seven o'clock. After the equipment was returned to the camp at about three o'clock in the afternoon, or later, plaintiffs took charge and worked manually until it was all serviced. This work was finished at different times from seven or eight o'clock until sometimes as late as eleven o'clock at night. The number of hours during which the plaintiffs were thus engaged in actual manual labor varied from day to day, depending upon weather and other conditions. During the day from seven or eight o'clock in the morning until three in the afternoon Johnson was at liberty on regular work days. He was required to be present all the remaining hours of the day and night. Gunter and Veazey testified that they were required to be at their respective camps to do certain chores and to care for and guard the property both day and night and that their foremen told them they would be discharged if they absented themselves from camp.

A further factor entering into the problem is that the evidence shows that the plaintiffs slept in trailers on the premises an average of eight or nine of each 24 hours, except when something went wrong at night rendering it necessary for them to get up and take care of the property committed to their charge.

A fair inference from defendant's answer is that it contemplated and contends that plaintiffs should be paid only for the number of hours they devoted to actual manual labor, and that since the number necessarily varied from day to day the contract for an average of six hours a day is valid and binding. The court apparently adopted this view, and believing that the evidence failed to show definitely the actual number of hours the plaintiffs thus worked overtime held the evidence to be too indefinite to make a jury case.

The plaintiffs on the other hand contend that their employment as watchmen entitles them to compensation for all the hours they were required to be present at camp charged with the responsibility of caring for and protecting the property intrusted to their custody, and during which time they were not at liberty to go where or do what they pleased.

If it be held that plaintiffs are entitled to compensation only for the number of hours of manual labor performed by them, then the evidence relating to the number of hours of overtime worked is indefinite and uncertain. On the other hand, if to hours of manual labor there should be added the time plaintiffs were required to remain at their places of duty as caretakers and watchmen, then the evidence is sufficiently definite and certain to require the issues to be submitted to the jury.

Upon the present record it cannot be held as a matter of law that plain-

tiffs can be allowed compensation only for the hours devoted to manual labor. In its answer defendant enumerated the various duties of the plaintiffs separately; and in the case of Johnson added, "and to keep general watch over such trucks to prevent vandalism thereto." It is also alleged that he was employed "as a greaser and night watchman." The answer declares that Gunter was employed to perform certain enumerated tasks "and to keep general watch over said machinery at night to prevent vandalism thereto." As to Veazey, the answer states that he was employed to look after mules "and to keep general watch over them at night and on Sundays and holidays when not being worked." In the case of each of the plaintiffs, after enumerating their several duties, the answer adds the anomalous statement, "which duties required less than six hours per day." Such a statement apparently can refer only to the hours estimated to be necessary to perform the manual tasks included in the duties enumerated. We do not think the act means that an employer may claim all of an employee's time and compensate him for only a part of it. An agreement to pay for only a part of the hours which an employee is required to serve is invalid. The purposes of Congress in enacting the statute cannot be thus frustrated. See Missouri, K. & T. Ry. Co. v. United States, 231 U.S. 112, 119, 34 S.Ct. 26, 58 L.Ed. 144; Chicago, R. I. & P. Ry. Co., v. United States, 8 Cir., 253 F. 555; Travis v. Ray, D.C.Ky., 41 F.Supp. 6, 8; Northern Pac. Ry. Co. v. United States, 9 Cir., 220 F. 108, 110; United States v. Southern Pac. Co., 9 Cir., 245 F. 722, 725.

The court erred in directing a verdict at the close of plaintiff's evidence.

■ Complaint is made also of the allowance of an attorney's fee of only $100 for plaintiffs' attorneys. Since the case must be tried again, that part of the judgment fixing such fee should be vacated and the allowance or disallowance of an attorney's fee should be determined at the conclusion of the trial.

The judgment appealed from is reversed and the case is remanded, with instructions to grant a new trial.

STONE, Circuit Judge (concurring).

I concur in the excellent opinion of Judge THOMAS. Since there is to be a new trial, it seems to me advisable to make an additional statement which may be helpful to the trial judge on retrial.

From the testimony of plaintiffs (at the trial from which this appeal) and from the arguments on this appeal, it would seem that a large issue of fact in this controversy is as to the amount of overtime which can be allowed to the several plaintiffs in connection with their duties as caretakers or watchmen. The evidence here shows that plaintiffs slept on the premises and that this sleep was an average of eight or nine hours a night, except when something went wrong necessitating their getting up to care for the property. The claims of plaintiffs cover this time when plaintiffs were sleeping as being hours of employment and, therefore, subject to overtime payment.

Since this case was taken from the jury at the close of the evidence for plaintiffs, we cannot anticipate what the evidence of defendant, on retrial, will be as to the duties and the work performed by each of the plaintiffs in the capacity of caretaker or watchman. However, we can be reasonably sure that the entire evidence, on retrial, will give the jury a picture of what such employment and duties were and what was done in performance thereof. In rulings on evidence and in the charge on retrial, it may be useful to the trial judge and to the parties to have the view of this court as to whether such time of sleeping should be regarded as hours of employment and, therefore, subject to overtime. The purpose of this separate opinion is to give my own views as to this matter. My view is that the time when these plaintiffs could be sleeping is not to be treated as hours of employment *in the factual situation shown in this present record*. I do not mean that, in every case nor under all circumstances, sleeping hours should be excluded from employment hours. Whether they should or not must depend upon the factual situation of each case as it appears. That such hours may be excluded under certain fact situations is not a novel idea (see Muldowney v. Seaberg Elevator Co., D.C., 39 F.Supp. 275, 282, and Interpretative Bulletin No. 13, Department of Labor, Wage and Hour Division, paragraphs 1, 2, 6 and 7). Nor do I mean to exclude the time when plaintiffs might be aroused at night to care for the property. I cover solely the time when they were or could have been sleeping at night.