**WALLING, Administrator, Wage and Hour Division, U. S. Department of Labor, v. KEANSBURG STEAMBOAT CO.**

No. 9270.

Circuit Court of Appeals, Third Circuit.

Argued April 24, 1947.

Decided June 13, 1947.

Morton Liftin and Eugene Green, both of Washington, D. C., (William S. Tyson, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., and John A. Hughes, Regional Atty., of New York City, on the brief), for appellant.

Sidney A. Schwartz, of New York City (Victor Samuel, of Newark, N. J., and Alexander & Ash and Edward Ash, all of New York City, on the brief), for appellee.

Before BIGGS, MARIS, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

This appeal raises questions concerning the applicability of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., to certain employees of defendant-appellee.

There is no substantial dispute as to the facts involved. Defendant has been engaged in the operation of two steamships. Between May and September or October of the years 1938-1944, the vessels were used to transport passengers between New Jersey and New York. At the close of each of these navigation periods, the vessels were placed in drydock for a short time, following which they were tied up and moored to the docks of defendant in New Jersey, where they remained until the next navigation period.

During each mooring interval, various repairs were performed on the vessels. Some repairs were similar to work performed during the navigation period, while other repairs were of a more elaborate nature. The vessels, with engines and boilers disassembled, could not and and did not leave the docks during the mooring intervals.

At the beginning of each navigation period, individuals were hired and signed articles as seamen. The crew of each vessel, during these periods, consisted of approximately twenty men, in accordance with the minimum set by the Certificates of Inspection.[1] These men enjoyed the privileges and rights usually accorded to seaman, including those granted by the Merchant Marine (Jones) Act 1920, 46 U.S.C.A. § 688 et seq., the Public Health Service Act, 42 U.S.C.A. § 201 et seq., and Subchapter XIII of the Social Security Act, 42 U.S.C.A. § 1331 et seq.

At the end of each navigation season, the employment of half or more of the men was terminated. Those who remained performed the repairs on the vessels, much of this work differing substantially from their duties during the navigation season. Some lived on board the vessels during the mooring intervals, while others chose to live ashore.

---

[1] These certificates were issued by the United States Coast Guard.

Plaintiff, Administrator of the Wage and Hour Division of the United States Department of Labor, takes the position that, although all these employees during the navigation period may be "seamen" within the meaning of 29 U.S.C.A. § 213 (a),[2] they are not "seamen" during the mooring interval. On the authority of Weaver v. Pittsburgh Steamship Co., 6 Cir., 1946, 153 F.2d 597, certiorari denied Rymorkiewicz v. Pittsburgh Steamship Co., 1946, 328 U. S. 858, 66 S.Ct. 1351, 90 L.Ed. 1630, however, the lower court denied plaintiff's request under 29 U.S.C.A. § 217 for an injunction and dismissed the complaint.

■ We are aware of the restrictive interpretation to be accorded exemptions from the Fair Labor Standards Act of 1938, if the broad objectives of that legislation are to be attained. See Phillips Co. v. Walling, 1945, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876. We must pause, however, before we extend this principle to the point where we exempt individuals for the transportation period but not for the mooring interval. The history of the legislation and cases decided points to the conclusion that the seamen retained by defendant for the mooring intervals did not lose their identity as "seamen." All five cases stressed by plaintiff[3] are in no way inconsistent with this conclusion. In general, these cases stand for the principle, with which we agree, that the Fair Labor Standards Act of 1938 is intended to exclude only those nautical employees who are considered "seamen" as the term is ordinarily used.[4] Each opinion cited in footnote 3, infra, makes plain that the work of the employees concerned was primarily not of a maritime nature. Without special training and not required to sign articles as seamen, those men worked on dredges and lighters which lacked effective means of self-propulsion and which were not inspected by government agencies. At no time during the year could they be said to be performing primarily the duties of "seamen." Legislative history of the statute showed no congressional intent to exclude that class of workers. Cf. Gale v. Union Bag & Paper Corporation, 5 Cir., 1940, 116 F.2d 27, certiorari denied 1941, 313 U.S. 559, 61 S.Ct. 837, 85 L.Ed. 1519.

■ More analogous to the facts of the case at bar is Weaver v. Pittsburgh Steamship Co., supra. In the Weaver case, a fireman on steamships was held to be a seaman during the mooring intervals. Although there are differences between that case and ours,[5] we believe that the underlying principle is the same: i.e., an individual employed as a seaman, who continues primarily to perform a seaman's work during mooring intervals, remains a "seaman" for the purposes of the Fair Labor Standards Act of 1938. This conclusion appears more consonant with the legislative history of the statutory clause exempting seamen.[6] Consequently, we believe that the lower court was correct in holding that the employees retained during the mooring inter-

---

[2] "The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (3) any employee employed as a seaman * * *." 29 U.S. C.A. § 213.

[3] Anderson v. Manhattan Lighterage Corp., 2 Cir., 1945, 148 F.2d 971, certiorari denied, 1945, 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428; Walling v. Great Lakes Dredge & Dock Co., 7 Cir., 1945, 149 F. 2d 9, certiorari denied 1945, 326 U.S. 760, 66 S.Ct. 140, 90 L.Ed. 457; Walling v. Bay State Dredging & Contracting Co., 1 Cir., 1945, 149 F.2d 346, 161 A.L. R. 825, certiorari denied, 1945, 326 U.S. 760, 66 S.Ct. 140, 90 L.Ed. 457; Walling v. W. D. Haden Co., 5 Cir., 1946, 153 F. 2d 196, certiorari denied, 1946, 328 U.S. 836, 66 S.Ct. 1373, 90 L.Ed. 1636; and Sternberg Dredging Co. v. Walling, 8 Cir., 1947, 158 F.2d 678.

[4] See Walling v. Bay State Dredging & Contracting Co., 1 Cir., 1945, 149 F.2d 346, 348.

[5] In the Weaver case, the employee received the same rate of pay, lived aboard the vessel, and performed the same kind of work during the mooring period.

[6] Seamen were exempted from operation of the Fair Labor Standards Act of 1938 so as to avoid conflict of jurisdiction and confusion of labor relations. See Weaver v. Pittsburgh Steamship Co., 6 Cir., 1946, 153 F.2d 597, 599; Walling v. Great Lakes Dredge & Dock Co., 7 Cir., 1945, 149 F.2d 9, 11; Walling v. Bay State Dredging & Contracting Co., 1 Cir., 1945, 149 F.2d 346, 349; Anderson v. Manhattan Lighterage Corp., 2 Cir., 1945, 148 F.2d 971, 973.

vals were exempt from the Fair Labor Standards Act of 1938.

█ A subsidiary question initially raised by this court likewise requires consideration. From the record it appears that defendant hired several employees for the first time during at least one mooring interval. In a reply brief filed subsequent to the oral arguments, defendant has alleged that all such employees were carried on the payrolls of another corporation, which was originally joined as a defendant, but against which corporation legal proceedings have been discontinued. Plaintiff has taken the position that either all or none of the steamship personnel of defendant are "seamen" within the meaning of the Fair Labor Standards Act of 1938; consequently, plaintiff has not introduced evidence clarifying the status of those hired during the mooring intervals. If the status of these individuals is likewise in question, and if they signed articles as seamen and continued to work on defendant's steamships in the ensuing navigation period, they too would be included within the seamen's exemption clause of the statute. On the other hand, if they were not required to sign articles and were employed only during the mooring intervals, we believe that the exemption clause would not be applicable. These questions are appropriate matters for the trier of fact.

█ Defendant has asserted as a further defense that, during the mooring interval, it is neither "engaged in commerce" nor "in the production of goods for commerce." [7] We think it clear, however, that the repair and maintenance of the steamships in preparation for their use in interstate commerce is so closely related to the movement of the commerce as to be part of it. See Walling v. McCrady Construction Co., 3 Cir., 1946, 156 F.2d 932, certiorari denied 67 S.Ct. 298; Skidmore v. Casale, 2 Cir., 1947, 160 F.2d 527, certiorari denied 67 S.Ct. 1205.

We think it necessary that the court below determine (1) whether the status of those hired during a mooring interval is still in issue, and (2) if so, whether those individuals are "seamen" within the meaning of 29 U.S.C.A. § 213(a). In order to allow the court below an opportunity to determine these two questions the judgment of the court below will be vacated and the cause will be remanded for further proceedings not inconsistent with this opinion.